Hon. Richard A. Jones

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | | |
|---|---|---|
| **SUSAN SNYDER**, | ) | Case No. 2:11-cv-01379-RAJ |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S RESPONSE TO** |
| | ) | **DEFENDANT'S MOTION FOR** |
| vs. | ) | **SUMMARY JUDGMENT** |
| | ) | |
| **DANIEL N. GORDON, P.C., et al.** | ) | NOTE ON MOTION CALENDAR: |
| | ) | July 20, 2012 |
| Defendants. | ) | |
| | ) | |

## I.    INTRODUCTION.

The federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") broadly prohibits unfair collection methods regardless of the validity of any underlying debt.  (See Doc. 20 at 5-6).  Courts interpret a debt collector's actions under FDCPA using an objective "least sophisticated debtor" standard.  (See Doc. 20 at 6-7).  The FDCPA imposes strict liability on debt collectors, and so a violation need not be knowing or intentional.  (See Doc. 20 at 7).  Because the FDCPA is a remedial statute designed to protect consumers, it is broadly construed in their favor.  (See Doc. 20 at 7-8).  In this case, Plaintiff, Susan Snyder ("Ms. Snyder") is a "consumer," Defendant, Daniel N. Gordon, P.C. ("DNG") is a "debt collector," and the subject obligation is a "debt," all within the scope of the FDCPA.  (See Doc. 20 at 8-9).

DNG violated the FDCPA at sections 1692e(2)(A) and 1692e(10) in its communications to Ms. Snyder, by misleading Ms. Snyder as to the character and amount of her alleged debt.  DNG violated section 1692e(3) in its initial communication to Ms. Snyder by misrepresenting or confusing the

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

consumer as to the level of attorney involvement.  DNG violated section 1692c(c) by calling Ms. Snyder to collect a debt after receiving written notice not to call Ms. Snyder.  DNG violated sections 1692e(5) and 1692f by attempting to collect a debt from Ms. Snyder without the required Washington state license.  DNG's unlicensed collection activity is also a violation of the Washington Consumer Protection Act.

## I.  DNG IS NOT ENTITLED TO SUMMARY JUDGMENT ON MS. SNYDER'S CLAIMS UNDER 15 U.S.C. §§ 1692e(2)(A) OR 1692e(10).

For the reasons stated in Ms. Snyder's motion for partial summary judgment, Ms. Snyder is entitled to summary judgment on her claims under the FDCPA at section 1692e(2)(A) and 1692e(10). (See Doc. 20 at 9-17).

### A.  The *Rooker-Feldman* Doctrine Does Not Bar Ms. Snyder's Claims.

When a federal plaintiff does not claim injury resulting from a state court's judgment, *Rooker-Feldman* does not prevent a federal court from exercising jurisdiction over the claim.  *Skinner v. Switzer*, 131 S. Ct. 1289, 1297, 179 L. Ed. 2d 233 (2011).  Put another way, "[i]f an independent federal claim will not disturb a state court judgment, then that claim may go forward." *Druther v. Hamilton*, 75 Fed. R. Serv. 3d 316, at *3 (W.D. Wash. 2009).  In *Druther*, this Court examined the interplay between a federal action under the FDCPA and a state court's judgment that the underlying debt was valid, against the backdrop of a defendant's *Rooker-Feldman* challenge:

> [W]hen a debtor brings an action under the FDCPA, the action does not challenge the state court judgment itself, but rather challenges the debt collection practices that led to the judgment. Because an FDCPA plaintiff is not challenging the validity of the debt, but rather the collection practices of the creditor, a claim under the FDCPA is an "independent claim" from a state court action to collect a debt and federal courts have jurisdiction over the case.
>
> \*     \*     \*
>
> Focusing on the relief that Plaintiff is seeking in this current lawsuit, it is clear that the *Rooker-Feldman* doctrine does not bar this current action. The courts are clear that the FDCPA applies to the collection of the debt. It does not apply to the validity of the debt. Plaintiff is not seeking to overturn the money judgment on the debt that was entered against him in state court. Rather, he is seeking statutory and actual damages for Defendant's debt collection practices. He is not asserting as his injury legal errors by the state court and is not seeking relief from the state

Plaintiff's Response To Defendant's Motion for Summary Judgment - 2
Case No. 2:11-cv-01379-RAJ

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

court judgment. Therefore, the *Rooker-Feldman* doctrine does not preclude Plaintiff's claims.

*Druther v. Hamilton*, 75 Fed. R. Serv. 3d 316, at *4 (W.D. Wash. 2009); *see also Sprinkle v. SB&C Ltd.*, 472 F. Supp. 2d 1235, 1241, n.1 (W.D. Wash. 2006) ("when a debtor brings action under the FDCPA, the action does not complain of the state court judgment itself. Instead, it challenges the debt collection practices that led to the judgment. Thus it follows that the debtor may prevail without inviting review of the state court judgment.").

Similar to *Druther* and *Sprinkle*, Ms. Snyder does not seek through this action relief from the state court's judgment—in fact, she has appealed the state court's judgment in accordance with Washington procedure. (Doc. 22-8). In this case, Ms. Snyder does not claim any injury resulting from the state court having entered a judgment. Rather, Ms. Snyder seeks recovery for damages for an injury caused by the conduct of DNG—claims that would exist independently of any decision made by the state court whether the debt is valid. *See Baker v. G. C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) ("a debtor has standing to complain of violations of the Act, regardless of whether a valid debt exists").

Ms. Snyder's cause of action under 15 U.S.C. § 1692e(2)(A) arose the instant DNG sent Ms. Snyder correspondence that made false or misleading representations as to the amount of the debt. Even a single effort to collect an incorrect amount violates this section. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) ("§ 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period."); *Brown v. Palisades Collection, LLC*, No. 1:11-CV-00445-JMS, 2011 WL 2532909, at *3 (S.D. Ind. June 24, 2011) ("debt collectors . . . are explicitly forbidden from making false statements about debts in the first instance, 15 U.S.C. § 1692e(2)(A)");[1] *Velazquez v. NCO Fin. Sys., Inc.*, No. CIV.A. 2:11-CV-00263, 2011 WL 2135633, at *6 (E.D. Pa. May 31, 2011)

---

[1] *See also Gamby v. Equifax Info. Services LLC*, 462 F. App'x 552, 556-57 (6th Cir. 2012) ("a single act seeking payment from the wrong individual has been sufficient to constitute a violation."); *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) ("under § 1692e ignorance is no excuse"); *Chiverton v. Fed. Fin. Grp., Inc.*, 399 F. Supp. 2d 96, 101 (D. Conn. 2005) (determining that a debt collector made a false representation in violation of the FDCPA by seeking to collect on a debt that no longer existed); *Owens v. Howe*, No. 1:04–CV–152, 2004 U.S. Dist. LEXIS 22728, at *34-36 (N.D.Ind. Nov. 8, 2004) (unpublished order) (holding that a creditor's act of sending a collection letter to the wrong person violated the FDCPA provision prohibiting false representations).

Plaintiff's Response To Defendant's Motion for Summary Judgment - 3
Case No. 2:11-cv-01379-RAJ

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

("even where the collector mistakenly sends one letter may give rise to a claim under the FDCPA as a matter of law").  As explained in Ms. Snyder's motion for partial summary judgment, DNG's October 8, 2010 communication violates section 1692e, as do DNG's follow up communications in January and February, 2011.  (Doc. 20 at 9-17).  These events occurred prior to the state court's entry of judgment in November 2011.  (See Doc. 22-7).  As a result, it would not be possible for Ms. Snyder's cause of action to relate in any way to the judgment of the state court, which had not yet been entered. Therefore, *Rooker-Feldman* does not bar Ms. Snyder's claims.

### B.    Ms. Snyder's Claims Are Not Barred By *Res Judicata*.

"The legal doctrine of res judicata includes the two related concepts of claim preclusion and issue preclusion."  *Druther*, 75 Fed. R. Serv. 3d 316, at *5.  "Four criteria must be present in order for claim preclusion to apply. There must be: (1) the same subject matter, (2) the same cause of action, (3) the same persons and parties, and (4) the quality of the parties."  *Druther*, 75 Fed. R. Serv. 3d 316, at *5.  Similarly, issue preclusion, "prevents a party from relitigating an issue decided in a previous action if four requirements are met: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action."  *Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008).  "The burden is on the party seeking to rely upon issue preclusion to prove each of the elements have been met."  *Id.* at 1050-51.  "[T]he party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518 (9th Cir. 1985).  "If there is doubt, however, collateral estoppel will not be applied."  *Id.*

In this case, DNG has presented no evidence to show that any issues raised herein were litigated and decided in the state case.  Indeed, the state court did not decide whether DNG's written correspondence contained any false or misleading representations.  The state court held that Ms. Snyder owed DNG a debt for a certain amount—a decision that Ms. Snyder has appealed through the proper state court procedure, but which she does not challenge in the instant litigation.  Rather, Ms.

Plaintiff's Response To Defendant's Motion for Summary Judgment - 4
Case No. 2:11-cv-01379-RAJ

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

Snyder claims that DNG used unfair practices in its attempts to collect the debt.  The issue of whether DNG's debt collection activities violate the FDCPA has not been previously argued or decided, and Ms. Snyder's FDCPA claims are properly before this Court.

## II.  DNG IS NOT ENTITLED TO SUMMARY JUDGMENT ON MS. SNYDER'S CLAIM UNDER 15 U.S.C. § 1692e(3).

The FDCPA at section 1692e(3) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> *        *        *
>
> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

15 U.S.C. § 1692e(3).

Given the broad remedial purposes of this section and the FDCPA generally, courts have construed section 1692e(3) to find liability where there is any false or misleading representation as to the level of attorney involvement, discussed *infra*.

### A.  A Collection Letter Sent On Law Firm Letterhead Conveys Attorney Involvement In A Legal Capacity.

Collection letters sent on law firm letterhead are "sufficient to give the least sophisticated consumer the impression that the letters [are] communications from an attorney."  *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993) (holding that such an impression "was false and misleading" when the attorney "did not review each debtor's file; he did not determine when particular letters should be sent; he did not approve the sending of particular letters based upon the recommendations of others; and he did not see particular letters before they were sent—indeed, he did not even know the identities of the persons to whom the letters were issued.").

The Seventh Circuit examined at length the requirement that attorneys review collection letters before they are sent to consumers:

> An unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the

Plaintiff's Response To Defendant's Motion for Summary Judgment - 5
Case No. 2:11-cv-01379-RAJ

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.

A letter from an attorney implies that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which the letter was sent. That's the essence of the connotation that accompanies the title of "attorney." A debt collection letter on an attorney's letterhead conveys authority. Consumers are inclined to more quickly react to an attorney's threat than to one coming from a debt collection agency. It is reasonable to believe that a dunning letter from an attorney threatening legal action will be more effective in collecting a debt than a letter from a collection agency. **The attorney letter implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action. And the letter also implies that the attorney has some personal involvement in the decision to send the letter. Thus, if a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word "attorney" in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file.** Any other result would sanction the wholesale licensing of an attorney's name for commercial purposes, in derogation of professional standards:

> [A] lawyer has been given certain privileges by the state. Because of these privileges, letters ... purporting to be written by attorneys have a greater weight than those written by laymen. But such privileges are strictly personal, granted only to those who are found through personal examination to measure up to the required standards. Public policy therefore requires that whatever correspondence purports to come from a lawyer in his official capacity must be at least passed upon and approved by him. He cannot delegate this duty of approval to one who has not been given the right to exercise the functions of a lawyer.

American Bar Association, Formal Opinion 68 (1932).

*Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996) (emphasis added).

"Although an attorney may be acting solely in the capacity of a debt collector and may not be communicating any explicit representation of a future course of action, when the attorney acting as a debt collector uses law firm letterhead the attorney acting as a debt collector plainly is communicating to the debtor in his or her capacity as an attorney." *Lesher v. Law Office of Mitchell N. Kay, P.C.*, 724 F. Supp. 2d 503, 508 (M.D. Pa. 2010) ("A law firm's letter does bear an implied threat of litigation, and does connote that it is a communication from an attorney.").

The Third Circuit upheld the Middle District of Pennsylvania's analysis, and quoted the district court's description of the message a collection letter on law firm letterhead conveys to a consumer:

Plaintiff's Response To Defendant's Motion for Summary Judgment - 6
Case No. 2:11-cv-01379-RAJ

WEISBERG & MEYERS, LLC
5025 N. Central Ave. #602
Phoenix, AZ 85012
888-595-9111 ext 412

A consumer is reasonably expected to believe that a law firm is comprised of attorneys and that it does legal work. In the context of a consumer debt, a reasonable perception of consumers is that if a consumer debt is being handled on behalf of the lender by a law firm and if the amount of money that the law firm is seeking (or some lesser settlement amount) is not paid, then the lawyer(s) will use the legal process with which they are familiar and for the use of which they are specifically trained to obtain a mandatory order of payment, which order will be enforceable by penalties within the power of courts to impose. The implication that a communication to a consumer concerning a debt is from an attorney has a particular well-known and well-understood effect. That is explicitly recognized in and incorporated into § 1692e.

*Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 1002, n.9 (3d Cir. 2011).

**B.    If A Collection Letter Is Not Sent By A Law Firm In Its Legal Capacity, It Must Include A Clear And Effective Disclaimer To Explain That To The Consumer.**

A collection letter from a law firm must contain a clear and effective "disclaimer so as to clearly articulate to the consumer the nature of the law firm's involvement." *Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009).   The Fifth Circuit explicitly "caution[ed] lawyers who send debt collection letters to state clearly, prominently, and conspicuously that although the letter is from a lawyer, the lawyer is acting solely as a debt collector and not in any legal capacity when sending the letter. **The disclaimer must explain to even the least sophisticated consumer that lawyers may also be debt collectors and that the lawyer is operating only as a debt collector at that time.**" *Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009) (emphasis added).

In a case relied on by many debt collectors, the Second Circuit held that a law firm may escape liability under section 1692e(3) by including the statement: "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account." *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361 (2d Cir. 2005).   However, many circuit and district courts have disagreed:

> In our view, the least sophisticated debtor, upon receiving these letters, may reasonably believe that an attorney has reviewed his file and has determined that he is a candidate for legal action. We do not believe that such a reading would be "bizarre or idiosyncratic."
>
> Nor do we believe that the disclaimers included in the letters . . . make clear to the least sophisticated debtor that the Kay Law Firm is acting solely as a debt collector and not in any legal capacity in sending the letters.  [I]n our view, the statement that "[a]t this point in time, no attorney with this firm has personally

reviewed the particular circumstances of your account" does little to clarify the Kay Law Firm's role in collecting the debt because it completely contradicts the message sent on the front of the letters—that the creditor retained a law firm to collect the debt.

*Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 1003 (3d Cir. 2011) (citations omitted).[2]

District courts within the Ninth Circuit have agreed.  The District of Oregon found the *Greco* disclaimer, though appearing within the body of the front of the letter, to be "relatively obscure," explaining:

> The possibility of "judicial remedies" arises throughout the letter. McGavic not only uses his law firm's name in the letterhead and signature line, but also refers to the balance due as a "claim" rather than a debt. Further, Dunn is forewarned of possible court costs and/or attorney fees, encouraged to communicate with the law firm for a "helpful and amicable resolution of this claim," and threatened with an immediate lawsuit at the creditor's instruction.
>
> Regardless of McGavic's relatively obscure disclaimer, [which was identical to the *Greco* disclaimer,] the least sophisticated consumer would likely infer from the letter's overall threat of legal action that McGavic's firm was prepared to bring action against him at any time. I hold, therefore, that McGavic's letter also violates § 1692e.

*Dunn v. Derrick E. McGavic, P.C.*, 653 F. Supp. 2d 1109, 1114-15 (D. Or. 2009).

Similarly, the Northern District of California held that the *Greco* disclaimer, though appearing in the middle of collection letters, failed to explain a law firm's involvement where its collection letters stated it had been "retained" and implicitly threatened legal action:

> I find that all three of the letters deceptively imply attorney involvement. Each letter is printed on defendant's letterhead, which states "Attorneys at Law" and is signed "Richard J. Boudreau & Associates, LLC." Although using attorney letterhead alone may not violate the FDCPA, the legal language in each letter crosses the line. The first letter opens with "This *law firm* has been *retained*" (emphasis added) which is language that suggests that it is from an attorney hired to do legal work. . . .
>
> The disclaimer in the middle of each letter that "no attorney with this firm has personally reviewed the particular circumstances of your account" is contradicted

---

[2] Whether the *Greco* disclaimer appears on the front or the back of the letter is a distinction without importance.  As the district court in *Lesher* pointed out, "the location of that language within the letter is not a factor of prominent importance. In our view, that language does not mitigate the impression of potential legal action."  *Lesher v. Law Office of Mitchell N. Kay, P.C.*, 724 F. Supp. 2d 503, 508 (M.D. Pa. 2010), *affirmed*, 650 F.3d 993 (3d Cir. 2011).  This is consistent with the Ninth Circuit's recognition that even the least sophisticated debtor is presumed to have "a basic level of understanding and willingness to read with care."  *Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011).

Plaintiff's Response To Defendant's Motion for Summary Judgment - 8
Case No. 2:11-cv-01379-RAJ

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

and overshadowed by the rest of the language in each letter, which would suggest to the least sophisticated consumer that the letter was from an attorney. Defendant's reliance on the words "amicable, voluntary resolution" is inadequate in light of each of the phrases quoted above that imply impending legal action. The only amicable resolution mentioned in the letter is payment of the amount demanded. The least sophisticated consumer could well assume that if she doesn't pay that amount, she will be sued.

*Robertson v. Richard J. Boudreau & Assocs., LLC*, No. C09-1681 BZ, 2009 WL 5108479, at *2 (N.D. Cal. Dec. 18, 2009) (emphasis in original); *accord Weiner v. Bloomfield*, 901 F. Supp. 771, 777 (S.D.N.Y. 1995) (noting that a one sentence disclaimer cannot outweigh the unmistakable impression conveyed by the remainder of a communication).

### C.   DNG's Letter Violated 15 U.S.C. § 1692e(3) By Misleading The Consumer As To The Level Of Attorney Involvement.

DNG's initial communication to Ms. Snyder is sent on law firm letterhead, with the firm name, Daniel N. Gordon, P.C., appearing in the signature block.  (See Doc. 20-2).  The letterhead indicates that Daniel N. Gordon, P.C. is made up of "Attorneys and Counselors at Law," and then lists three attorneys in the firm, all of whom are "Licensed in . . . Washington."  (Doc. 20-2).  The letter opens: "This firm has been retained with the authority to file a lawsuit against you for a debt owed by you to American Express; but at the time of this letter, no decision has been made whether or not we will file a law suit."  (Doc. 20-2).[3]  The next sentence states: "Demand is hereby made upon you for payment in the sum of $18026.56."  (Doc. 20-2).

Two paragraphs down, the letter states: "At this time, no attorney has personally reviewed the particular circumstances of your account."  (Doc. 20-2).  This statement fails to make clear that the lawyer, or law firm, "is acting solely as a debt collector and not in any legal capacity when sending the letter," and "that lawyers may also be debt collectors and that the lawyer is operating only as a debt collector at that time."  *Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009).

In fact, it is contradicted by the appearance and substance of the letter, which from its first sentence implies that an attorney with the law firm has made a determination that the debt is valid and

---

[3] Although curiously, DNG asserts: "DNG is not retained to represent American Express for any purpose other than litigation." (Doc. 21 at 14, lines 13-14).

Plaintiff's Response To Defendant's Motion for Summary Judgment - 9
Case No. 2:11-cv-01379-RAJ

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

owing.  The letter conveys this impression due to its repeated references to whether a law suit will be filed "against you for **a debt owed by you** to American Express."  (Doc. 20-2) (emphasis added).  This begs the question: Who made such legal determination regarding the debt—i.e. that the debt was owed by the consumer to the creditor—if not an attorney within the law firm?  The letter also states: "Demand is hereby made upon you for payment in the sum of $18026.56."  Who is demanding payment from the consumer, if not an attorney within the law firm?  If it is a lay collector, or a non-lawyer assistant, then the letter would be sent in violation of the Washington Rules of Professional Conduct, because non-lawyer assistants may only act at the direction or under the supervision of a lawyer.  GR 24(c); RPC Rule 5.3.  But as the letter points out, no attorney had reviewed the claims made in the letter with respect to Ms. Snyder's individual account.  If an attorney had in fact made the legal determination that the debt was owed, then the letter violates 15 U.S.C. § 1692e(10) by falsely representing that no attorney had reviewed Ms. Snyder's account.

Because DNG's initial communication has the capacity to mislead an unsophisticated consumer as to the level of attorney involvement, it violates 15 U.S.C. §§ 1692e(3) and 1692e(10).  Because "a debt collector's liability under § 1692e of the FDCPA is an issue of law" in the Ninth Circuit, *Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011), the Court may grant summary judgment in favor of Plaintiff on this issue, *sua sponte*, as the content of the letter is not disputed.  (See Doc. 19 at 5, ¶33: "admit that DNG mailed a letter to Plaintiff on or about October 8, 2010, which letter speaks for itself.");  Fed. R. Civ. P. 56(f).

### III.   DNG IS NOT ENTITLED TO SUMMARY JUDGMENT ON MS. SNYDER'S CLAIM UNDER 15 U.S.C. § 1692g(b).

For similar reasons, DNG's letter violates 15 U.S.C. § 1692g(b), which prohibits a debt collector from overshadowing or making claims inconsistent with the consumer's right to dispute the debt.  The aim of section 1692g(b) is that "the unsophisticated consumer is to be protected against confusion whatever form it takes.  A contradiction is just one means of inducing confusion; 'overshadowing' is just another; and the most common is a third, the failure to explain an *apparent* though not actual contradiction."  *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997).  In the Ninth Circuit, "it is well established that a debt collection letter is deceptive where it can be reasonably read

Plaintiff's Response To Defendant's Motion for Summary Judgment - 10
Case No. 2:11-cv-01379-RAJ

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

to have two or more different meanings, one of which is inaccurate." *Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011) (alterations omitted).  A debt collector violates the FDCPA if its communication fails to convey information "clearly and effectively and thereby makes the least sophisticated consumer uncertain as to the meaning of the message." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (internal quotations omitted).

DNG's averment that Ms. Snyder "understood every aspect of the letter" is not only a misrepresentation of her testimony, but even if true, is also irrelevant.  It is a misrepresentation, because when asked about the letter more specifically later in her deposition, Ms. Snyder testified: "I don't really understand it," and that there were parts of the letter where she "[didn't] know what the letter actually mean[t]," beyond that it was referring to an American Express account.  (Doc. 23-1 at 9, 74:6-20).  But even if a savvy consumer would be able to understand every aspect of DNG's letter, that is irrelevant because "the FDCPA is concerned primarily with the likely effect of various collection practices on the minds of unsophisticated debtors." *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1179 (9th Cir. 2006).  "This objective standard 'ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd ... the ignorant, the unthinking and the credulous.' " *Id.* at 1171 (quoting *Clomon*, 988 F.2d at 1318-19).  This is why "the test is the capacity of the statement to mislead; evidence of actual deception is unnecessary." *United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131, 139 (4th Cir. 1996).

In this case, DNG's October 8, 2010 letter's portent of a lawsuit, demand for payment, coupled with the overwhelming impression that the demands are being made by an attorney with the law firm, confuses the consumer and is contradicted by the disclaimer that an attorney had not reviewed Ms. Snyder's account.  Ms. Snyder testified that she did not understand the notices conveyed by the letter. (Doc. 23-1 at 9, 74:6-20).  Therefore, DNG is not entitled to summary judgment on Ms. Snyder's claim under 15 U.S.C. § 1692g(b).

## IV.   DNG IS NOT ENTITLED TO SUMMARY JUDGMENT ON MS. SNYDER'S CLAIM UNDER 15 U.S.C. § 1692c(c).

The FDCPA at section 1692c(c) states:

Plaintiff's Response To Defendant's Motion for Summary Judgment - 11
Case No. 2:11-cv-01379-RAJ

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except -
>
>> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>>
>> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>>
>> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.
>
> If such notice from the consumer is made by mail, notification shall be complete upon receipt.

15 U.S.C. § 1692c(c).

In this case, Ms. Snyder sent DNG written communication on January 25, 2011 disputing the debt, requesting verification, and further stated: "I would also like to request, in writing, that no telephone contact be made by your offices to my home or to my place of employment. If your offices attempt telephone communication with me, . . . it will be considered harassment. . . . All future communications with me MUST be done in writing. . . ." (See Correspondence dated January 25, 2011, attached hereto as Exhibit A; see Excerpts from Deposition of Susan Snyder, attached hereto as Exhibit B, at 42:3-18). DNG received Ms. Snyder's letter on January 26, 2011. (See Doc. 19 at 7, ¶46; Doc. 20-5 at 5, No. 28). Notwithstanding this clear instruction, DNG placed a telephone call to Ms. Snyder in February, 2011 in connection with its attempts to collect a debt from Ms. Snyder. (See Exhibit B, at 51:15-20).

### A.   Ms. Snyder's Communication To DNG Was Sufficient To Invoke Section 1692c(c).

The FDCPA defines communication as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Applying this to section 1692c(c), the consumer can invoke its protection by informing the debt collector that she wishes the debt collector to cease "the conveying of information regarding a debt directly or indirectly . . . through **any** medium." *Id.* (emphasis added). The plain, dictionary meaning of "any" is "one, a, an, or some; one or more without specification or identification." See Dictionary.com, "any," *available at*

http://dictionary.reference.com/browse/any.   As such, the section does not require the consumer to request the debt collector to cease communicating through *all* media, as DNG would suggest.  Rather, the consumer need only request the debt collector to cease communicating in one or more media.

DNG's reliance on an unpublished, out-of-district case giving cursory analysis otherwise is unavailing, because the Ninth Circuit has held that a consumer's request for the debt collector to cease "any phone calls to our home or employment," was sufficient to invoke the protections afforded by section 1692c(c).  *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1167-68 (9th Cir. 2006).[4]

Similarly, in *Bishop v. I.C. System, Inc.*, the consumer wrote a cease and desist letter to the debt collector, stating: "Any further correspondence from your organization or any other collection agency will be discarded or returned to you unopened."  *Bishop*, 713 F. Supp. 2d 1361, 1365-66 (M.D. Fla. 2010).   Although correspondence seemingly would refer only to communication by letter, (see Dictionary.com,   "correspondence,"   *available   at*   http://dictionary.reference.com/browse/ correspondence), the court held that the debt collector's subsequent telephone calls to the consumer violated section 1692c(c).  *Bishop*, 713 F. Supp. 2d at 1367-68 ("The statute does not require that the consumer use any specific language or 'magic words' to tell a debt collector to cease communication. A rigid requirement would not make sense given the statute's remedial nature and its purpose to protect the public."); *see also Horkey v. J.V.D.B. & Associates, Inc.*, 333 F.3d 769, 773 (7th Cir. 2003) ("Unsophisticated consumers, whatever else may be said about them, cannot be expected to assert their § 1692c[] rights in legally precise phrases.").

### B.      Ms. Snyder Did Not Waive Section 1692c(c)'s Protection.

"Waiver is an affirmative defense, upon which [the party asserting it] bears the burden of proof."  *Nichols v. Nw. Mut. Life Ins. Co.*, No. 10-55650, 2012 WL 2498848, at *2 (9th Cir. June 29, 2012).  "It is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that

---

[4] DNG cites this case in its motion for its discussion of when a consumer may waive protections previously invoked by section 1692c(c), discussed *infra*.

Plaintiff's Response To Defendant's Motion for Summary Judgment - 13
Case No. 2:11-cv-01379-RAJ

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

defense and its exclusion from the case." *United States v. Manzo*, 675 F.3d 1204, 1211, n.3 (9th Cir. 2012) (quoting 5 Charles Wright & Arthur R. Miller, Federal Practice and Procedure § 1278 (3d ed. 1998)).

DNG has not pleaded waiver (see Doc. 19), and is therefore precluded from arguing the defense now.  However, even if the argument could be considered, it would fail because DNG has not—and cannot—meet its burden to show waiver.  DNG has produced no evidence showing that Ms. Snyder requested DNG to call her.  It has stated only that Ms. Snyder called DNG; however there is no evidence that Ms. Snyder requested a return phone call or otherwise gave DNG any permission (written or oral) to communicate with her by telephone.  *Compare with Clark*, 460 F.3d at 1167, where the consumer placed a call to the debt collector in order to request certain information be provided to her.  In this case, the only evidence as to the content of any of Ms. Snyder's communications to DNG, shows that Ms. Snyder demanded DNG to make "no telephone contact" with her.  (Exhibit A).

### C.     DNG's Subsequent Communication Does Not Fall Within The Exceptions Of Section 1692c(c).

In arguing that a settlement discussion is one of the exceptions to further communications under section 1692c(c), DNG relies the Ninth Circuit's statement that "[a] settlement offer is an example of a 'specified remedy.' "  *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012).  However, a closer look at section 1692c(c) reveals that the exception to further communication only applies when the communication is "to **notify** the consumer that the debt collector or creditor **may** invoke [a] specified remed[y]," 15 U.S.C. § 1692c(c)(2) (emphasis added), or "to **notify** the consumer that the debt collector or creditor **intends** to invoke a specified remedy."  15 U.S.C. § 1692c(c)(3). These exceptions do not permit the debt collector to actually invoke the specified remedy.  A closer look at the Ninth Circuit's holding in *Cruz* reveals that it went on to hold that the debt collector's subsequent communications "were merely continued attempts to collect," which did not fall under any exception.  *Cruz*, 673 F.3d at 998.  A settlement offer, or a phone call in which settlement negotiations regarding the debt take place, merely represents a debt collector's continued attempt to obtain money from the consumer—i.e. to collect the debt.  In fact, Ms. Snyder's deposition testimony indicates that DNG refused to settle, and that Ms. Snyder wanted no such further communications.  (Exhibit B at

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

52:3-10) ("I offered them a certain amount. They said no, they wanted more, slammed the phone down on me, and I just didn't want to work with these people, you know. The reason I did it, you know, my husband knows I'm very sick, my daughter's sick, and the stress was hurting us."). Therefore, DNG is not entitled to summary judgment on this claim.

## V.    DNG IS NOT ENTITLED TO SUMMARY JUDGMENT ON MS. SNYDER'S CLAIM UNDER 15 U.S.C. § 1692f.

### A.    Whether A Debt Collector's Conduct Is Unfair Is A Jury Question.

Whether a debt collector's conduct constitutes "unfair or unconscionable means to collect or attempt to collect any debt" is a question for a jury to decide.  *See Fox v. CitiCorp Credit Servs., Inc.*, 15 F. 3d 1507, 1517 (9th Cir. 1994) ("A jury could rationally find the filing of an application for a writ of garnishment when the Foxes were current in payments demanded by Citicorp agents to constitute an unfair or unconscionable means of collection or attempted collection of a debt under section 1692f."); *LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185 (11th Cir. 2010) ("[W]hether Unifund's letter constitutes an "unfair or unconscionable means to . . . attempt to collect a debt" for purposes of § 1692f presents a jury question."); *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007) (whether a debt collector's conduct violates the FDCPA's prohibition on deceptive communications, or unconscionable means, is generally a question of fact); *Savage v. Hatcher*, 109 Fed. Appx. 759, 761-62 (6th Cir. 2004) (finding summary judgment inappropriate with respect to a plaintiff's claims that a debt collector "used unfair or unconscionable means to collect or attempt to collect any debt").

### B.    Section 1692f Broadly Prohibits Unfair Or Unconscionable Conduct.

The FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  "Aside from the examples of violations provided within Section 1692f, the FDCPA does not purport to define what is meant by 'unfair' or 'unconscionable.' "  *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir. 2010). Importantly, the listing of the eight specific violations was not intended to limit the applicability of the Act's general prohibition of "unfair or unconscionable" behavior.  See 15 U.S.C. § 1692f (listing certain violative conduct "[w]ithout limiting the general application of the foregoing").  In other words,

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

in enacting section 1692f, Congress employed general language to "enable the courts, where appropriate, to proscribe . . . improper conduct which is not specifically addressed."  S. Rep. No. 95-832, 95th Cong., 1st Sess. 4, reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1698.  Section 1692f "serves a backstop function, catching those 'unfair practices' which somehow manage to slip by §§ 1692d & 1692e." *Edwards v. McCormick*, 136 F. Supp. 2d 795, 806 (S.D. Ohio 2001).  Section 1692f "allows the court to sanction improper conduct that the FDCPA fails to address specifically." *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996), citing *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1461, n.10 (C.D. Cal. 1991).

### C.   Unlicensed Collection Activity Is Inherently Unfair And Unconscionable.

When a debt collector attempts to collect a debt without a requisite license, such conduct violates section 1692f because the debt collector "deprive[s] the plaintiff of her right as a consumer debtor residing within the state to have the defendant's qualifications as a collection agency reviewed by state authorities." *Gaetano v. Payco of Wisconsin, Inc.*, 774 F. Supp. 1404, 1414-15, n.8 (D. Conn. 1990).  "Similarly, other district courts faced with violations of parallel state laws that mandate licensure by collection agencies have held that violations of those laws constitute *per se* violations of the FDCPA." *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 728 (D. Md. 2011).  *See Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471 (M.D. La. 1995) (stating that an unlicensed collector using language in the notice informing the debtor that the notice was "an attempt to collect a debt" violates Section 1692f); *Russey v. Rankin*, 911 F. Supp. 1449, 1459 (D.N.M. 1995) (holding that collection activity which violates state law violates the FDCPA); *Kuhn v. Account Control Technology, Inc.*, 865 F. Supp. 1443, 1449-50 (D. Nev. 1994) (unlicensed collection activities violate Section 1692f); *see also LeBlanc*, 601 F.3d at 1200 (finding a jury question whether debt collector's unlicensed collection activities were unfair or unconscionable); *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 366 (D. Md. 2010) (holding plaintiff stated claim under section 1692f when alleging the debt collector operated "illegally without a mandatory license").

In Washington, the law requires collection agencies to be licensed in order to engage in collection activity.  RCW § 19.16.110.  Chapter 19.16 RCW contains extensive oversight and

Plaintiff's Response To Defendant's Motion for Summary Judgment - 16
Case No. 2:11-cv-01379-RAJ

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

regulations on the conduct of collection agencies, evidencing the State's high premium placed on fairness and honest dealing in debt collection. *See Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 897 (Wash. 2009) ("The business of debt collection affects the public interest, and collection agencies are subject to strict regulation to ensure they deal fairly and honestly with alleged debtors.").

It is the express purpose of the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." By requiring collection agencies to be licensed, among other requirements contained in Chapter 19.16 RCW, Washington has taken action consistent with the FDCPA's animating purpose to protect consumers. For example, collection agencies are required to post a bond for the benefit of victims of the collection agency's noncompliance with state regulations. RCW § 19.16.190. Collection agencies must be licensed before bringing a lawsuit against consumers to collect a debt. RCW § 19.16.260. By evading licensure, a debt collector frustrates both Washington's and Congress's aim to protect consumers, and its unlicensed collection activity is inherently unfair and unconscionable.

In this case, DNG is not licensed as a collection agency pursuant to Chapter 19.16 RCW. (Doc. 19 at 9, ¶64) (admitting "DNG does not have a license under Chapter 19.16 RCW." Doc. 18 at 8, ¶64). As explained *infra*, DNG falls under the scope of Washington's licensing regulations, and is required to be licensed. Therefore, DNG's attempts to collect a debt from Ms. Snyder without being licensed violate 15 U.S.C. § 1692f.

## VI. DNG IS NOT ENTITLED TO SUMMARY JUDGMENT ON MS. SNYDER'S CLAIM UNDER 15 U.S.C. § 1692e(5).

Among the deceptive means that the FDCPA prohibits is "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). This Court has explained that this section also prohibits "the *taking* of 'action that cannot legally be taken.' " *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 2d 1235, 1246 (W.D. Wash. 2006) (recognizing "the futility of a statutory scheme that would provide *more* protection to debt collectors who violate the law than to those who merely threaten or pretend to do so.") (emphases in original). This "majority view [is] more persuasive

Plaintiff's Response To Defendant's Motion for Summary Judgment - 17
Case No. 2:11-cv-01379-RAJ

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

and consistent with legislative intent." *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 730 (D. Md. 2011) (holding unlicensed collection activity also violates 15 U.S.C. § 1692e(5)).

"[E]ven equivocal language can constitute an impermissible threat under the § 1692e." *Uyeda v. J.A. Cambece Law Office, P.C.*, 2005 WL 1168421, at *4 (N.D. Cal. 2005); *Brown v. Law Offices of Butterfield, Joachim*, 2004 WL 1175819, at *5 (E.D. Pa. May 27, 2004) (rejecting the defendant's "qualified language" defense, and granting summary judgment for the consumer-debtor); *see also* FTC Official Staff Commentary, § 807(5), at 6 ("A debt collector's implication, as well as a direct statement, of planned legal action may be an unlawful deception. For example, reference to an attorney or to legal proceedings may mislead the debtor as to the likelihood or imminence of legal action. A debt collector's statement that legal action has been recommended is a representation that legal action may be taken, since such a recommendation implies that the creditor will act on it at least some of the time.").

In this case, because DNG attempted to collect a debt from Ms. Snyder without being duly licensed as required by state law, DNG threatened to, and took, an action that Washington law does not permit.  In addition, DNG's state that a lawsuit may be filed was a threat that could not legally be taken, since collection agencies must be licensed before bringing a lawsuit in Washington.  RCW § 19.16.260.  Therefore, DNG is not entitled to summary judgment on Ms. Snyder's claim under section 1692e(5).

## VII.   DNG IS NOT ENTITLED TO SUMMARY JUDGMENT ON MS. SNYDER'S CLAIM UNDER THE WASHINGTON CONSUMER PROTECTION ACT.

The Washington Collection Agency Act, Chapter 19.16 RCW, ("WCAA"), prohibits acting as a collection agency or an out-of-state collection agency without a license.  DNG is an out-of-state collection agency.  If DNG is not an out-of-state collection agency, it qualifies as a collection agency.[5] DNG is not licensed as either a collection agency or an out-of-state collection agency under Chapter 19.16 RCW.  By acting as an out-of-state collection agency or a collection agency without a license, and by its additional violations of RCW § 19.16.250, DNG violated the WCAA.  Violations of the

---

[5] A "collection agency" "does not mean and does not include . . . [a]n 'out-of-state collection agency' as defined in this chapter."  RCW § 19.16.100(3)(e).

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

WCAA are per se unfair and deceptive practices, which are prohibited by the WCPA at RCW § 19.16.020.

**A.     DNG Is An Out-Of-State Collection Agency As Defined By RCW § 19.16.100(4).**

The WCAA defines an "out-of-state collection agency" as "a person whose activities within this state are limited to collecting debts from debtors located in this state by means of interstate communications, including telephone, mail, or facsimile transmission, from the person's location in another state on behalf of clients located outside of this state, but does not include any person who is excluded from the definition of the term 'debt collector' under the federal fair debt collection practices act (15 U.S.C. Sec. 1692a(6))."  RCW § 19.16.100(4).

DNG admits it is a debt collector under the FDCPA.  (Doc. 19 at 3, ¶16; Doc. 20-5 at 3, No. 3). Unlike the definition of "collection agency," discussed *infra*, there are no other exceptions to the definition of an "out-of-state collection agency" under RCW § 19.16.100.  DNG is located in a state other than Washington—namely, Oregon.  (Doc. 20-5 at 4, No. 18).  DNG attempted to collect a debt from Ms. Snyder on behalf of a creditor client located in a state other than Washington.  (Doc. 20-5 at 3, No. 6).  Therefore, DNG is an "out-of-state collection agency."

**B.     In The Alternative, DNG Is A Collection Agency As Defined By RCW § 19.16.100(3).**

The WCAA defines "collection agency" as "[a]ny person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another person."  RCW § 19.16.100(2)(a).  "Claim" is defined very broadly to mean "any obligation for the payment of money or thing of value arising out of any agreement or contract, express or implied."  RCW § 19.16.100(5).  In this case, DNG attempted to collect a "claim" from Ms. Snyder allegedly owed to another person—American Express.  (Doc. 19 at 5, ¶34; Doc. 20-2). Therefore, DNG satisfies the definition of a "collection agency."

**C.     DNG Is Not Exempted From The Definition Of Collection Agency.**

DNG does not dispute that it satisfies the definition of a collection agency as defined by RCW § 19.16.100(2)(a).  Instead, it attempts to rely on an exception to the term "collection agency," which applies to:

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

> Any person whose collection activities are carried on in his, her, or its true name and are confined and are directly related to the operation of a business other than that of a collection agency, such as but not limited to: Trust companies; savings and loan associations; building and loan associations; abstract companies doing an escrow business; real estate brokers; property management companies collecting assessments, charges, or fines on behalf of condominium unit owners associations, associations of apartment owners, or homeowners' associations; public officers acting in their official capacities; persons acting under court order; lawyers; insurance companies; credit unions; loan or finance companies; mortgage banks; and banks.

RCW § 19.16.100(3)(c).

**1.      This Court, And Other Washington Courts, Have Repeatedly Rejected DNG's Argument.**

DNG has now made this same argument to this Court no less than four times, and this Court has consistently and repeatedly rejected DNG's argument.  *See Mandelas v. Gordon*, 785 F. Supp. 2d 951, 960 (W.D. Wash. 2011) ("the majority of Washington federal court decisions, including several involving Gordon, have determined that lawyers are not categorically excluded from regulation as "collection agencies" under the WCAA.") (citing *Lang v. Gordon*, No. C 10-0819RSL, 2011 WL 62141, at *2 (W.D. Wash. Jan. 6, 2011); *McLain v. Daniel N. Gordon, PC*, No. C09-5362BHS, 2010 WL 3340528, at *8 (W.D. Wash. Aug. 24, 2010); *LeClair v. Suttell & Assoc., P.S.*, No. C09-1047JCC, 2010 WL 417418, at *6 (W.D. Wash. Jan. 29, 2010); *Semper v. JBC Legal Group*, No. C04-2240RSL, 2005 WL 2172377, at *3 (W.D. Wash. Sept. 6, 2005); *but see Motherway v. Daniel N. Gordon, PC*, No. C09-5605RBL, 2010 WL 2803052 (W.D. Wash. Jul. 15, 2010)).

The King County Superior Court has sanctioned DNG, in part for repeatedly raising the same argument, without citing or attempting to distinguish known case law rejecting it, explaining:

> The overwhelming weight of federal authority is against Gordon on the issue of whether law firms are categorically exempt from the WCAA, several cases involving Gordon itself. [] Gordon did prevail in *Motherway v. Daniel N. Gordon, PC*, 2010 WL 2803052, at *4-*5 (W.D. Wash. July 15, 2010).  However, *Motherway* has been either implicitly or expressly rejected by all four subsequent cases from the Western District of Washington, which the *Mandelas* court characterized as a "growing consensus that the WCAA does not exclude all law firms from regulation as collection agencies."

*      *      *

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

> At some point, reliance on an isolated case like *Motherway*, which has been discredited by subsequent federal case law, is no longer "warranted by law."

*Daniel N. Gordon, P.C. v. Moritz*, No. 11-2-09358-1 SEA, at 7-8 (Wash. Super. Ct. July 1, 2011) (attached hereto as Exhibit C).

### 2.      The Law Is Clear That A Person Collecting Debts On Behalf Of Another Is Not Exempted From The Scope Of The WCAA.

This Court recently affirmed that "the WCAA does not categorically exclude all lawyers." *Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1219 (W.D. Wash. 2011).  "RCW 19.16.100(3)(c) only excludes those lawyers who are attempting to collect on their own debts."  *Id.* "Since a collection agency could be someone attempting to collect on their own claim, it is logical that the legislature felt it necessary to exempt lawyers collecting on their own claim in RCW 19.16.100(3)(c)."  *Id.* at 1220.  "**The WCAA does not exempt attorneys attempting to collect a debt owed to a third party, as is the case here**."  *Id.*

This makes sense because "under the plain language of the statute, a lawyer or law firm is only excluded if its collection activities are 'carried on in his, her, or its true name and are confined and are directly related to the operation of a business other than that of a collection agency.' RCW 19.16.100(3)(c)."  *Mandelas v. Gordon*, 785 F. Supp. 2d 951, 960-61 (W.D. Wash. 2011).  This language requires three elements to be shown: the person's collection activity must be (1) carried on in its true name; (2) confined to a business other than that of a collection agency; and (3) directly related to a business other than that of a collection agency.

First, a lawyer attempting to collect a debt owed to a third party is not attempting to collect a debt in its name, but rather that of another—in this case, American Express.  *Paris*, 828 F. Supp. 2d at 1220 (holding a lawyer subject to the WCAA where he "was attempting to collect a debt owed to a third party and not a debt in his own name").  Second, to qualify for the exemption, a person's debt collection activity must be confined to a business other than that of a collection agency.  In other words, the activity must be confined to a business other than "directly or indirectly collecting or attempting to collect claims owed or due or asserted to be owed or due another person."  RCW § 19.16.100(2)(a) (defining collection agency).  Here, DNG's activity included directly or indirectly

Plaintiff's Response To Defendant's Motion for Summary Judgment - 21
Case No. 2:11-cv-01379-RAJ

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

collecting or attempting to collect claims owed or due or asserted to be owed or due another person. (Doc. 19 at 5, ¶34; Doc. 20-2; Doc. 20-5 at 3, No. 6).  Therefore, its business was not confined to—i.e. it did not only consist of—something else, and so it cannot be exempt under this subsection.

### 3. DNG's Collection Activity Was Not Limited To The Practice Of Law.

Even if the practice of law were grounds for a categorical exemption from the WCAA—it is not—DNG's October 8, 2010 collection letter to Ms. Snyder cannot be considered the practice of law because it was not reviewed by an attorney.  With very limited exceptions, "only licensed attorneys may practice law in the state of Washington." *Bishop v. Jefferson Title Co., Inc.*, 107 Wash. App. 833, 841, 28 P.3d 802, 807 (Wash. App. 2001); *Washington State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n*, 91 Wash. 2d 48, 56, 586 P.2d 870, 875 (1978) ("only those persons who are licensed to practice law in this state may do so without liability for unauthorized practice.").  Although only an attorney may practice law, the October 8, 2010 letter to Ms. Snyder clearly states that no attorney has reviewed the claims made in the letter with respect to Ms. Snyder's account.  Therefore, DNG was not practicing law in sending its October 8, 2010 letter to Ms. Snyder, and it is not exempt from the WCAA for this reason as well.

### D. DNG Violated The WCPA.

#### 1. DNG Violated RCW § 19.16.110.

The Washington Collection Agency Act, Chapter 19.16 RCW, ("WCAA"), provides: "No person shall act, assume to act, or advertise as a collection agency or out-of-state collection agency as defined in this chapter, except as authorized by this chapter, without first having applied for and obtained a license from the director."  RCW § 19.16.110.  It is undisputed that DNG does not have a license under Chapter 19.16 RCW.  (Doc. 19 at 9, ¶64) (admitting "DNG does not have a license under Chapter 19.16 RCW." Doc. 18 at 8, ¶64).  Because DNG acted as a collection agency or out-of-state collection agency without a license, it violated RCW § 19.16.110.

#### 2. DNG Violated RCW § 19.16.250.

The WCAA also provides:

No licensee or employee of a licensee shall:

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

\*      \*      \*

(8)  Give or send to any debtor or cause to be given or sent to any debtor, any notice, letter, message, or form which represents or implies that a claim exists unless it shall indicate in clear and legible type:

\*      \*      \*

(c)  If the notice, letter, message, or form is the first notice to the debtor or if the licensee is attempting to collect a different amount than indicated in his or its first notice to the debtor, an itemization of the claim asserted must be made including:

> (i)  Amount owing on the original obligation at the time it was received by the licensee for collection or by assignment;

> (ii)  Interest or service charge, collection costs, or late payment charges, if any, added to the original obligation by the original creditor, customer or assignor before it was received by the licensee for collection, if such information is known by the licensee or employee:  PROVIDED, That upon written request of the debtor, the licensee shall make a reasonable effort to obtain information on such items and provide this information to the debtor;

> (iii)  Interest or service charge, if any, added by the licensee or customer or assignor after the obligation was received by the licensee for collection;

> (iv)  Collection costs, if any, that the licensee is attempting to collect;

> (v)  Attorneys' fees, if any, that the licensee is attempting to collect on his or its behalf or on the behalf of a customer or assignor;

> (vi)  Any other charge or fee that the licensee is attempting to collect on his or its own behalf or on the behalf of a customer or assignor.

RCW § 19.16.250(8)(c).

DNG's October 8, 2010 letter to Ms. Snyder failed to include the itemization of the debt required by RCW § 19.16.250(8)(c)(i)-(vi).   (Doc. 20-2).   Therefore, DNG violated RCW § 19.16.250(8).[6]

### 3.   DNG's Violations Of The WCAA Result In Violations Of The WCPA.

"The operation of a collection agency or out-of-state collection agency without a license as prohibited by RCW 19.16.110 and the commission by a licensee or an employee of a licensee of an act

---

[6] The content of the letter is not disputed.  (Doc. 19 at 5, ¶33).  Plaintiff therefore requests the Court  to establish DNG's liability on this issue at summary judgment pursuant to Fed. R. Civ. P. 54(f).

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412

or practice prohibited by RCW 19.16.250 are declared to be unfair acts or practices or unfair methods of competition in the conduct of trade or commerce for the purpose of the application of the Consumer Protection Act found in chapter 19.86 RCW."  RCW § 19.16.440.  DNG's violations of RCW §§ 19.16.110 and 19.16.250 are therefore also a violation of RCW § 19.86.020.  Violations of the WCAA and WCPA impact the public interest.  RCW § 19.86.093(1); *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 897 (Wash. 2009); *Evergreen Collectors v. Holt,* 60 Wash. App. 151, 156 (Wash. App., Div. 2, 1991).  DNG's conduct caused Ms. Snyder injury, including emotional distress (Exhibit B at 52:5-10) and time and expense in responding to DNG's violative collection efforts, not limited to pecuniary damage for mailing a written request for the itemization not included in DNG's written communication (Exhibit A; Exhibit B at 42:19-43:6; 43:25-44:8).  Because DNG violated the WCPA, it is not entitled to summary judgment on this claim.

WHEREFORE, Ms. Snyder respectfully requests the Court to deny Defendants' motion for summary judgment.

Respectfully submitted this 16th day of July, 2012.

s/Dennis R. Kurz
Dennis R. Kurz (WSB# 43735)
WEISBERG & MEYERS, LLC
5025 N. Central Ave. #602
Phoenix, AZ 85012
Telephone: 888-595-9111 ext 412
Facsimile: 866-565-1327
dkurz@attorneysforconsumers.com
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which shall send notification of such filing to the following:

J. Kurt Kraemer
McEwen Gisvold, LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland OR 97204
kurtk@mcewengisvold.com

s/Dennis R. Kurz
Dennis R. Kurz

Plaintiff's Response To Defendant's Motion for Summary Judgment - 24
Case No. 2:11-cv-01379-RAJ

WEISBERG & MEYERS, LLC
5025 N. Central Ave.  #602
Phoenix, AZ 85012
888-595-9111 ext 412