HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUSAN SNYDER,

    Plaintiff,

    v.

DANIEL N. GORDON, P.C.; MATTHEW AYLWORTH; and JOHN AND JANE DOES 1-50,

    Defendants.

CASE NO. C11-1379 RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Plaintiff's motion for partial summary judgment (Dkt. # 20) and Defendants' motion for summary judgment (Dkt. # 21). No party requested oral argument, and the court finds oral argument unnecessary. For the reasons stated below, the court GRANTS Plaintiff's motion and GRANTS in part and DENIES in part Defendants' motion. This order concludes with directions to the parties to meet and confer to prepare a joint statement as to the need for a trial and directions to the clerk to VACATE the trial date and all pending pretrial deadlines pending receipt of that joint statement.

## II. BACKGROUND

This case concerns Plaintiff Susan Snyder's contacts with Defendants Daniel N. Gordon, P.C. ("DNG") and Matthew Aylworth in Defendants' attempts to collect a debt that Ms. Snyder owed to American Express. In 2008, Ms. Snyder owed a balance of

ORDER – 1

$18,022.12 on an American Express credit card. Kraemer Dec. (Dkt. # 23), Ex. 1 at 3. American Express retained DNG, a law firm, to represent it in litigation to collect the debt. Aylworth Dec. (Dkt. # 22) at 1. DNG employs Mr. Aylworth as an attorney.[1] *Id.*

On October 8, 2010, DNG sent Ms. Snyder a demand for payment in the sum of $18,026.56. Snyder Mot. at Ex. B. The letter demanded a single lump sum ("Demand is hereby made upon you for payment in the sum of $18,026.56") and did not break down the lump sum into principal, interest, or other charges. *Id.* On January 26, 2011, DNG sent Ms. Snyder a second letter. The letter stated that the "current balance" of the debt was $20,195.96. *Id.* at Ex. C. Like the previous letter, the January 26 letter did not break down the lump sum. *Id.* On February 3, 2011, DNG sent Ms. Snyder a third letter with a "current balance" of $20,100.37. *Id.* at Ex. D. Like the previous letters, the February 3 letter did not break down the lump sum. *Id.*

On January 25, 2011, Ms. Snyder requested in writing that DNG cease all telephone communications with her. Aylworth Dec. at Ex. 10. Ms. Snyder alleges that despite her request, a representative from DNG called her on February 17, 2011.

On November 15, 2010, DNG, on behalf of American Express, filed a breach of contract lawsuit against Ms. Snyder in the Everett Division of the Snohomish County District Court. The Everett court found in favor of American Express. *Id.* at Ex. 7.

### III.   ANALYSIS

**A.   Summary Judgment Standard**

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a

---

[1] Neither Ms. Snyder's complaint nor anything else in the record explains why she named Mr. Aylworth as a Defendant. The court has no idea what he personally did to subject himself to liability. Neither Mr. Aylworth nor DNG, however, has objected to Mr. Aylworth's presence as a Defendant. The court accordingly refers to the Defendants collectively in this order.

ORDER – 2

1   judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party must first show the
2   absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323
3   (1986).  The burden shifts to the opposing party to show a genuine issue of fact for trial.
4   *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The
5   opposing party must present probative evidence to support its claim or defense.  *Intel*
6   *Corp. v. Hartford Accident & Indem. Co*., 952 F.2d 1551, 1558 (9th Cir. 1991).

**B.     Fair Debt Collection Practices Act Standard**

Congress enacted the Fair Debt Collection Practices Act ("FDCPA," 15 U.S.C. §§ 1692-1692p) to counter the "abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers." *Turner v. Cook*, 362 F.3d 1219, 1226 (9th Cir. 2004).  The Act's restrictions on debt collectors run from the very broad (such as a prohibition on unfair or deceptive communication) to the very narrow (such as a prohibition on using post cards).  Courts must give the Act a liberal interpretation. *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1176 (9th Cir. 2006). The validity of the alleged debt does not bear on FDCPA violation analysis.  *Baker v. GC Serv. Corp.,* 677 F.2d 775, 777 (9th Cir. 1982).  Because the FDCPA is a strict liability statute, a debt collector's intent to deceive or mislead a consumer is irrelevant.  *Clark,* 460 F.3d at 1175.  Courts apply the FDCPA using a "least sophisticated consumer" standard, which ensures that the "FDCPA protects all customers, the gullible as well as the shrewd … the ignorant, the unthinking, and the credulous." *Id.* at 1171.  The "least sophisticated consumer" standard presents a lower bar for a plaintiff to overcome than does the familiar "reasonable person" standard.  *Terran v. Kaplan,* 109 F.3d 1428, 1431-32 (9th Cir. 1997).

**C.     Parties' Cross Motions for Summary Judgment**

Ms. Snyder seeks summary judgment on two of her claims:

ORDER – 3

1) that Defendants failed to itemize her debt in violation of §§ 1692e(2)(A) and 1692e(10); and

2) that Defendants provided her with three different representations of the amount she owed in violation of §1692e(2)(A).

Defendants in turn seek summary judgment on all of Ms. Snyder's claims on these grounds:

1) that they did not misrepresent the amount of Ms. Snyder's debt or the means they might use to collect it, in compliance with §§ 1692e(2)(A) and 1692e(10);

2) that they did not violate the FDCPA's ban on communication with Ms. Snyder after she requested they not call her, in compliance with § 1692c(c);

3) that they had no improper communications with Ms. Snyder within the 30-day window of § 1692g(b);

4) that they did not misrepresent the level of attorney involvement in collecting Ms. Snyder's debt, in compliance with §1692e(3);

5) that they did not violate Washington law by collecting debts without a license;

6) that they did not threaten to take action they could not legally take, in compliance with § 1692e(5); and

7) that the state court judgment disposes of Ms. Snyder's claims.

The court notes that it may grant summary judgment on any issue where there is no genuine issue of material fact, even if a party has not requested summary judgment on that issue. Fed. R. Civ. P. 56(e)(3).

**1.    The FDCPA Required Defendants to Provide an Itemization of Ms. Snyder's Debt.**

In each of Defendants' three letters to Ms. Snyder, they stated her debt as a single sum. The letters did not mention that the debt was subject to accrual of interest and other charges, and they failed to alert Ms. Snyder as to how much interest had already accrued. Ms. Snyder argues that the FDCPA obligated Defendants to provide that information,

ORDER – 4

although no section of the Act specifically prohibits Defendants' actions. Instead, Ms. Snyder cites §§ 1692e(2)(A) and 1692e(10), which respectively prohibit "false representation[s] of … the character, amount or legal status of any debt," and the "use of any false representation or deceptive means to collect or attempt to collect any debt." Given that these sections are largely identical, the court will consider them together. A debt collector's liability under § 1692e is a question of law. *Gonzalez v. Arrow Fin. Servs., LLC,* 660 F.3d 1055, 1061 (9th Cir. 2011).

As far as the court is aware, the Ninth Circuit has not directly addressed the issue of whether a debt collector must provide the consumer with a breakdown of the debt's accrued interest and other fees, as opposed to combining all charges together as a single sum. The Ninth Circuit has held, however, that "[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* at 1062 (quoting *Brown v. Card Serv. Ctr.,* 464 F.3d 450, 455 (3d Cir. 2006)).

Defendants' first letter read, in relevant part: "Demand is hereby made upon you for payment in the sum of $18,026.56." Snyder Mot. at Ex. B. Two subsequent letters made reference to a "Balance Due." *Id.* at Exs. C, D. None of the letters provided further detail regarding when or how the balance had been calculated, whether it included interest, or whether interest continued to accrue. The court finds that the "least sophisticated consumer" could have read these letters in at least two different ways. On one hand, an unsophisticated consumer could reasonably conclude that the balance was a fixed amount that would not be subject to further interest, late fees, or other charges. On the other, an unsophisticated consumer could just as reasonably determine that the balance would continue to grow over time as interest accrued. One of those meanings would necessarily be inaccurate. Therefore, the court finds that Defendants' letters were

ORDER – 5

deceptive as a matter of law.[2]  Courts in other districts have reached the same conclusion on similar facts.  *See Michalek v. ARS Nat'l. Sys., Inc.,* No. 3:11-CV-1374, 2011 WL 6180498, at *4 (M.D. Pa. Dec. 13, 2011) (holding that the term "balance" has more than one meaning); *Dragon v. I.C. Sys.,* 483 F. Supp. 2d 198, 203 (D. Conn. 2007) (holding that a reference to a "sum certain" was deceptive as a matter of law).  The court grants Ms. Snyder's motion for summary judgment on this issue.

### 2. Defendants Violated the FDCPA by Misstating the Amount of Ms. Snyder's Debt.

Each of Defendants' three letters to Ms. Snyder reported a different total amount owed.  Defendants do not dispute this fact.  The FDCPA prohibits the false representation of the "character, amount, or legal status" of any debt.  § 1692e(2)(A).  A misstatement of a debt need not be knowing or intentional to create liability under this section.  *Clark,* 460 F.3d at 1176.  Therefore, the court finds that Defendants' false representation of the amount of Ms. Snyder's debt, even if unintentional, constituted a violation of the Act as a matter of law.

However, Defendants raise a bona fide error defense, claiming that the difference between the balances in their second and third letters resulted from a clerical error by their computer system.  Section 1692k(c) of the FDCPA absolves debt collectors of liability under the Act if the debt collector "shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error."

The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof.  *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1514 (9th Cir. 1994).  A debtor must show that it maintains procedures to avoid errors.  *Reichert v. Nat'l*

---

[2] Defendants assert that another court in this District approved their form letter in *McLain v. Daniel N. Gordon, P.C.,* No. C09-5362BHS, 2011 WL 3340528 (W.D. Wash. Aug. 24, 2010).  While the *McLain* court found no FDCPA violation in portions of the letter, it did not reach the issues the court addresses today.

ORDER – 6

*Credit Sys., Inc.,* 531 F.3d 1002, 1006 (9th Cir. 2008) (affirming summary judgment for debtor where defendant failed to meet burden of proof on the bona fide error defense). The *Reichert* court explained that the defense "require[s] more than a mere assertion" that procedures are in place, and that "[the procedures] themselves must be explained, along with the manner in which they were adapted to avoid the error." *Id.* at 1007.

In this case, Defendants explain that the discrepancy between the second and third letters resulted from an error in their computer system, which "utilizes information" to calculate interest accrual and rates. Second Aylworth Dec. (Dkt. # 25) at 2. Defendants also state that DNG "regularly monitors" the computer system. *Id.* These brief, general descriptions of the procedure maintained to avoid error do not provide the kind of detail and depth of explanation *Reichert* requires. Defendants give the court no basis to conclude that they have a system in place to avoid the error that led to multiple misstatements of Ms. Snyder's debt. On this evidence, Defendants cannot meet their burden of proof on the affirmative defense as a matter of law.

### 3. Defendants Called Ms. Snyder After Receiving Notice that She did Not Wish to be Called.

Ms. Snyder sent Defendants a "no contact" notice stating that she did not wish to receive calls from them at work or at home. Less than a month later, Ms. Snyder claims that she received a call from DNG's office. She alleges that this call violated § 1692c(c), which prohibits debt collectors from contacting consumers who have provided written notice that they do not wish to be contacted. Defendants raise two arguments in response. First, they argue that Ms. Snyder waived protection under § 1692c(c) by calling DNG twice after sending her "no-contact" notice. Second, they argue that their call to Ms. Snyder was permissible because it regarded a settlement claim. The court addresses the waiver argument first.

ORDER – 7

### a. Ms. Snyder Did Not Waive Protection Under the Statute.

The Ninth Circuit has found that a consumer may waive the protection of § 1692c(c) by calling a debt collector and requesting further information. *Clark,* 460 F.3d at 1172 (holding that a consumer who called a collector requesting additional information implied consent to receiving a return call, and that the collector did not violate § 1692c(c) by returning the call).

In this case, however, there is no evidence that Ms. Snyder consented to receiving a return phone call, implicitly or otherwise. In her first call to DNG's office, on January 31, 2011, Ms. Snyder offered Defendants a settlement of $6,000. Defendants' representative responded that they could not accept a settlement of less than 50% of the debt, which would have been at least $9,000. Ms. Snyder stated that she could not pay that much, and the representative informed her that they would "continue with the legal process." Aylworth Dec., Ex. 9 at 14; Snyder Oppn., Ex. 2 at 9. In her second call, made on March 1, Ms. Snyder informed Defendants that she received their summons and that she was upset that the balance was too high. Aylworth Dec., Ex. 9 at 15. In neither call did Ms. Snyder give Defendants any indication that she wanted them to call her back at a later time. Defendants rejected her settlement offer, she had no reason to expect that they would call her to continue that conversation, and Defendants had no reason to believe that Ms. Snyder expected a return call. Ms. Snyder' second call did not involve any questions that she might need answered, or any conversation that required a follow-up call. Therefore, the court finds that Ms. Snyder did not waive her "no contact" request.

### b. There is No Evidence that Defendants' Call Regarded a Settlement Attempt.

Defendants next argue that because their call to Ms. Snyder regarded a settlement offer, no violation of the statute occurred. The statute provides an exception to the "no-contact" rule where the debt collector intends to "notify the consumer that the debt collector … intends to invoke a specified remedy." The Ninth Circuit has held that a

ORDER – 8

settlement offer falls under the "specified remedy" exception. *Cruz v. Int'l Collection Corp.,* 673 F.3d 991, 998 (9th Cir. 2012). However, Defendants have provided no evidence supporting their claim that the call regarded a settlement offer. Defendants make the assertion in their brief, but do not cite to any declaration, phone log, or other evidence. Therefore, the court finds that Defendants cannot take advantage of the statutory exception to the "no-contact" rule. The court grants summary judgment for Ms. Snyder on this issue.

### 4. Defendants Had No Improper Contact with Ms. Snyder During the Thirty Day Window of § 1692g(b).

Section 1692g(b) prohibits a debt collector from taking certain actions during the thirty-day period following the initial verification of a consumer's debt.[3] A debt collector's liability under this section is a question of law. *Terran,* 109 F.3d at 1432. Ms. Snyder alleges that Defendants' initial communication to her violated this prohibition. Ms. Snyder misreads the text of this section. The section regulates a debt collector's behavior *after* it sends the initial communication; it makes no mention of what a debt collector may do in the initial communication itself.

Furthermore, there is no evidence that Defendants' communications with Ms. Snyder during the thirty days following their first letter violated any of the

---

[3] The FDCPA provides as follows:

"If the consumer notifies the debt collector in writing within the thirty-day period [following the collector's verification of the debt] … that the debt … is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt … until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy … is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period … unless the consumer has notified the debt collector in writing that the debt … is disputed or that the consumer requests the name and address of the original creditor. *Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.*"

§ 1692g(b) (emphasis added).

ORDER – 9

prohibitions laid out in this section.  During that period, Defendants never communicated with Ms. Snyder directly.  Instead, they communicated with a third-party representative Ms. Snyder hired to negotiate her debt.  Aylworth Dec. at 3.  Only a debt collector's communications with the consumer herself may violate § 1692g(b).  *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 936 (9th Cir. 2007).  Therefore, the court finds as a matter of law that Defendants' acts did not violate this section.

### 5. Defendants Did Not Misrepresent the Level of Attorney Involvement in Ms. Snyder's Case.

DNG is a law firm, and it sent Ms. Snyder's collection letters on law firm letterhead.  Section 1692e(3) of the FDCPA prohibits debt collectors from falsely representing that the person with whom the consumer corresponds is an attorney.  A debt collector's liability under this section is a question of law.  *Gonzalez,* 660 F.3d at 1061.  While the Ninth Circuit has yet to reach this issue, several other courts have established guidelines for how a law firm, acting as a debt collector, may present itself to a consumer.  The Second Circuit held that a disclaimer could sufficiently mitigate the impression of attorney involvement in a collection letter.  *Greco v. Trauner, Cohen & Thomas, LLP,* 412 F.3d 360, 364-65 (2d Cir. 2005).  The *Greco* court found the language "at this time, no attorney has personally reviewed the particular circumstances of your account" adequate to put even the least sophisticated consumer on notice that the law firm did not act in a legal capacity when sending that letter.  *Id.*

Defendants used the language from *Greco* in their letter to Ms. Snyder.  Snyder Mot. at Ex. B.  The court finds that nothing in the remainder of the letter weakens the effect of the disclaimer.  In fact, several other portions of the letter also emphasize the lack of attorney involvement in the case.  For example, the letter clearly states that it is "from a debt collector" and that "no decision has been made whether or not we will file a lawsuit." *Id. Compare Robertson v. Richard J. Boudreau & Assocs., LLC,* No. C0901681 BZ, 2009 WL 51087479, at *2 (N.D. Cal. Dec. 18, 2009) (finding the

ORDER – 10

disclaimer overshadowed by the remainder of a letter, the "legal" tone of which "cross[ed] the line") *with Taylor v. Pinnacle Credit Servs., LLC,* No. C-10-05164 JCS, 2011 WL 1303430, at *10 (N.D. Cal. Apr. 4, 2011) (finding the disclaimer adequate where the rest of the letter did not "use any other language that suggests impending litigation"). The court holds that Defendants' letter did not, as a matter of law, misstate the level of attorney involvement.

### 6. Defendants Violated Washington Law by Collecting Debts Without a License.

Defendants admit that they do not have debt collector licenses in Washington, but contend that they are not required to obtain licenses because they are lawyers practicing law. Washington law requires any person acting as a collection agency to apply for and obtain a license. RCW § 19.16.110. Washington law defines "collection agency" as "[any] person directly or indirectly engaged in soliciting claims for collection, or colleting or attempting to collect claims owed or due or asserted to be owed or due another person." RCW § 19.16.100(2)(a).

Defendants point to a statutory exception to the definition of collection agencies, which excludes "[any] person whose collection activities are carried on in his, her, or its true name and are confined and are directly related to the operation of a business other than that of a collection agency . . . ." RCW § 19.16.100(3)(c). "[L]awyers" are among the non-collection agency businesses listed. *Id.* As several other courts in this District have noted, the exception does not categorically exclude lawyers from regulation. Instead, it excludes only those law firms that collect debts "directly related to the operation of a business other than that of a collection agency." *See Mandelas v. Gordon,* 785 F. Supp. 2d 951, 960 (W.D. Wash. 2011) (discussing other cases from courts in this District, including several in which DNG was the defendant). The letters make it clear that Defendants were attempting to collect the debt on behalf of American Express, a third party creditor. Furthermore, in their three collection letters, Defendants clearly

ORDER – 11

stated that they operated as a debt collector.  They emphasized this point in their request for summary judgment on the issue of whether they falsely represented the level of attorney involvement in Ms. Snyder's case.  They cannot argue in one instance that they acted as debt collectors, and in another that they acted as lawyers.  The court consequently finds that in sending the collection letters, Defendants acted as a collection agency without a license in violation of RCW § 19.16.110.  The court need not decide whether Defendants took other acts (such as suing Ms. Snyder) in DNG's capacity as a collection agency.

Acting as a collection agency without a license violates the Washington Collection Agency Act ("WCAA," RCW § 19.16).  Such a violation constitutes an unfair act or practice or unfair method of competition in the conduct of trade or commerce for the purposes of applying the Washington Consumer Protection Act ("CPA," RCW § 19.86.020).  RCW § 19.16.440.  To establish a violation of the CPA, a plaintiff must show five elements: (1) an unfair act or deceptive practice occurred; (2) the act or practice occurred in the conduct of trade or commerce; (3) the act or practice impacted the public interest; (4) the plaintiff suffered an injury to business or property; and (5) a causal link between the unfair or deceptive act or practice and the injury.  *Columbia Physical Therapy, Inc., P.S. v. Benton Franklin Orthopedic Associates, P.L.L.,* 168 Wash. 2d 421, 442, 228 P.3d 1260 (2010).  The WCAA violation establishes the first two elements as a matter of law, but Ms. Snyder has not produced evidence of the other three.

**7.     Defendants' Statements About the Actions They May Legally Take**

In their correspondence with Ms. Snyder, Defendants attempted to collect her debt and informed her that if the dispute could not be resolved, a lawsuit might result.  Section 1692e(5) of the FDCPA prohibits debt collectors from threatening to take action they cannot legally take.  Ms. Snyder claims that Defendants made two threats to take action they were not legally permitted to take because they are unlicensed under Washington

ORDER – 12

law: a threat to collect her debt, and a threat to file a lawsuit. The court has already established that Defendants acted as a collection agency without a license when they mailed Ms. Snyder's collection letters, and that doing so is unlawful under RCW § 19.16.110. Because Defendants were legally unable to collect Ms. Snyder's debt, the court finds that Defendants threatened to take action they were not legally able to take in violation of § 1692e(5). The court grants summary judgment for Ms. Snyder on this issue.

### 8. The State Court Judgment Does Not Dispose of Ms. Snyder's Claims.

Defendants argue that this court lacks the authority to review the Everett court's judgment against Ms. Snyder, and that the court therefore may not consider many of Ms. Snyder's claims in this case. Defendants invoke the Rooker-Feldman doctrine in support of this argument. The Rooker-Feldman doctrine generally bars a federal district court from reviewing the determinations of a state court. *Gruntz v. Cnty. of Los Angeles (In re Gruntz),* 202 F.3d 1074, 1078 (9th Cir. 2000) ("At its core, the Rooker-Feldman doctrine stands for the unremarkable proposition that federal district courts are courts of original, not appellate, jurisdiction."). The doctrine applies only where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 291 (2005).

Ms. Snyder does not ask this court to invalidate or reject the Everett court's action. She does not deny that she owes American Express a debt, as the Everett court ruled she does. She does not complain of any injury she suffered because of the Everett court's judgment against her. She instead complains of the steps Defendants took in their attempts to collect the debt. The court therefore holds that the Everett court judgment against Ms. Snyder does not preclude her from bringing the claims she made in this case.

ORDER – 13

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's motion (Dkt. # 20) and GRANTS in part and DENIES in part Defendants' motion (Dkt. # 21).

The court's order today disposes of most of the parties' disputes about liability as a matter of law.  It does not, however, determine the remedies to which the parties are entitled.  In light of this order, and because it appears that the parties have yet to engage in mandatory mediation, the court directs the parties to meet and confer about the resolution of this case.  No later than September 10, 2012, the parties shall submit a joint statement regarding their plans for resolution.  Among other things, the parties shall state when they intend to mediate this dispute (if they cannot resolve it without mediation), whether trial is necessary, what issues remain for trial, and when they will be prepared for trial.  Pending that submission, the court directs the clerk to VACATE the trial date and all pending pretrial deadlines.

Dated this 24th day of August, 2012.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 14